**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DIOGENES MONTILLA, | : | |
| | | Civil Action No. 05-2474 (FLW) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| WARDEN JOHN NASH, | : | |
| | | |
| Respondent. | : | |

**APPEARANCES:**

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondent |
| Diogenes Montilla | Irene E. Dowdy |
| F.C.I. Fort Dix | Asst. U.S. Attorney |
| P.O. Box 7000/Unit 5802 | 402 East State Street |
| Fort Dix, NJ 08640 | Suite 430 |
| | Trenton, NJ 08608 |

**WOLFSON**, District Judge

Petitioner Diogenes Montilla, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden John Nash.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the parties' submissions that Petitioner is not entitled to issuance of the writ, the Court will deny the Petition.

## II.   BACKGROUND

On April 11, 2003, Petitioner was sentenced in the United States District Court for the Southern District of New York to concurrent 63-month sentences, with four years of supervised release to follow, upon his convictions for Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and Distribution and Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).[2]  The Judgment and Commitment Order includes the sentencing court's recommendation that "[t]he defendant shall be afforded all appropriate drug treatment and counseling programs while in prison."  Petitioner has completed a 40-hour non-residential Drug Abuse Education Course,[3] but has been denied admission to the 500-hour Residential Drug Abuse Program, successful completion of which permits the Bureau of

---

[2] Petitioner was arrested on these offenses on March 27, 2002, and was released for about three weeks from October 15, 2002, until November 6, 2002, on strict supervision.

[3] The 40-hour non-residential Drug Abuse Education Course is mandatory for those prisoners whose current offense involved use of alcohol or other drugs and for any inmates for whom the sentencing court recommended drug programming.  See 28 C.F.R. 550.54(a)(1).

Prisons to reduce an inmate's term of imprisonment by up to one year.

Petitioner asserts that the Bureau of Prisons has unreasonably and arbitrarily denied him admission to the 500-hour Residential Drug Abuse Program ("RDAP").  He contends that the action of the BOP is arbitrary and an abuse of discretion because: (1) it is an abuse of discretion for the BOP to require that the documented substance abuse must have occurred in the 12-month period immediately preceding Petitioner's incarceration, (2) the trial court recommended that he be admitted to the RDAP, (3) two clinical psychologists at F.C.I. Fort Dix have recommended that he be admitted to the RDAP, and (4) the documentation in Petitioner's Pre-Sentence Investigation Report ("PSI"), which indicates no drug abuse during the twelve-month period immediately preceding his incarceration, is incorrect.

Respondent answers[4] that Petitioner has exhausted his administrative remedies and that this matter is ready for disposition.  Respondent denies that the BOP has improperly denied Petitioner admission to the 500-hour RDAP.

---

[4] Because it and certain exhibits refer to the confidential PSI, the Answer [7] has been filed under seal.  This Court has determined that any information from the PSI recited in this Opinion is relevant and appropriate for inclusion.

II.   ANALYSIS

In 1990, Congress charged the Bureau of Prisons with making available "appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out that requirement, as part of the 1994 Violent Crime Control and Law Enforcement Act, Congress amended § 3621 to require the BOP, subject to the availability of appropriations, to provide residential substance abuse treatment for all "eligible" prisoners.  18 U.S.C. § 3621(e)(1)(C).  An "eligible" prisoner is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program."  18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  As an incentive for successful completion of the residential treatment program, the period of time a prisoner convicted of a nonviolent offense remains in custody after successfully completing such a treatment program may be reduced up to one year by the BOP.  18 U.S.C. § 3621(e)(2).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement.  The regulation requires that "[t]he inmate must have a verifiable documented drug abuse problem."  28 C.F.R. § 550.56(a)(1).  "The decision on placement is made by the drug abuse treatment coordinator."  28 C.F.R.

4

§ 550.56(b). The BOP application of this regulation is contained in Program Statement 5330.10, which provides, in pertinent part:

> 5.4.1. Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV)*. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Pre-sentence Investigation (PSI) Report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

Program Statement 5330.10, Drug Abuse Programs Manual, Ch. 5, § 5.4.1.

The DSM-IV, published by the American Psychiatric Association, requires that at least one or three, respectively, of the symptoms listed in the criteria for substance abuse or dependence occur in the same twelve-month period. DSM-IV at 175-183. Thus, the BOP has instituted a practice of examining the prisoner's central file to determine if documentation exists to support a claim of substance abuse or dependence during the twelve-month period immediately preceding the prisoner's incarceration.

5

Here, Petitioner challenges both the practice of examining the twelve-month period immediately preceding incarceration for verification of substance dependence or abuse and the application of the Program Statement to him.  Petitioner fails on both arguments.

The standards set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), govern a court's review of an agency's construction of a statute.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted).

In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court upheld a related BOP regulation interpreting the phrase "nonviolent offense" and categorically excluding certain types of prisoners from participation in the early-release program.

> Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is

> forbidden to do so.  In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design."

Lopez, 531 U.S. at 242 (citations omitted).

Similarly, here, Congress has not spoken to the precise question at issue but has left it to the discretion of the Bureau of Prisons to determine which prisoners "have a substance abuse problem."  The BOP reasonably has turned to the DSM-IV criteria to identify prisoners who have a substance abuse problem.  As the DSM-IV, in turn, dictates that diagnosis is dependent upon the existence of certain symptoms during a twelve-month period, it is reasonable for the BOP to evaluate the existence of those symptoms during the twelve-month period immediately preceding a prisoner's entrance into the controlled environment of incarceration.  Moreover, because of the sentence-reduction incentive, it is reasonable for the BOP to review the central file for documentation corroborating a prisoner's self-report of substance abuse.  Thus, the challenged policy and practice of the BOP is a reasonable interpretation of the statute.  See, e.g., Quintana v. Bauknecht, 2006 WL 1174353 (N.D. Fla. May 2, 2006) (slip copy); Laws v. Barron, 348 F.Supp.2d 795 (E.D. Ky. 2004).

In addition, there was no abuse of discretion in the BOP's application of the policy to Petitioner.  Petitioner does self-

report substance abuse in his intake screening. Although both BOP psychologists noted Petitioner's report of a history of drug and alcohol abuse, and one recommended "Drug Abuse Program," neither diagnosed Petitioner under the DSM-IV as suffering from substance abuse or dependence or recommended the Residential Drug Abuse Program. Petitioner's self-report, moreover, is in stark contrast to the references to substance abuse in the PSI, the most recent of which dates back more than a decade before Petitioner's current incarceration. Specifically, the PSI states, under the heading "Substance Abuse" that "Montilla stated that he used marijuana on only one occasion at age 16 or 17, that he used cocaine on only one occasion in the 1980s, and that he recalled heavy consumption of alcohol only during the 1970s due to work stress and depression experienced during that time period." The PSI also reflects a 1988 conviction for operating a motor vehicle while impaired by alcohol, when he admitted to having "a few beers." There is no record of Petitioner challenging the accuracy of the PSI statements at the time of his sentencing. Petitioner also refers to an "OHA Psychiatric Review Technique Form," the source and purpose of which are otherwise unexplained, which reflects the preparer's conclusions that documentation of a substance addiction disorder is "present" based upon a history of cocaine abuse and that the impairment is not severe. This Form is dated December 22, 1998, substantially

more than twelve months before Petitioner's arrest in 2002 and is based upon a "history" of cocaine abuse of unspecified dates.

Petitioner clearly does not have a "verifiable documented drug abuse problem." The BOP did not act arbitrarily or abuse its discretion in denying Petitioner entrance into the 500-hour RDAP. See Quintana, 2006 WL 1174353; Calhoun v. Warden, F.C.I. Texarkana, 2006 WL 887677 (E.D. Texas April 4, 2006). Cf. Mitchell v. Andrews, 235 F.Supp.2d 1085 (E.D. Cal. 2001) (finding that BOP abused its discretion in denying admission to prisoner whose file contained numerous letters, declarations and sworn statements from family members and others documenting inmate's long-standing alcohol and drug abuse problems, including during last 12-month period prior to his arrest). Petitioner is not entitled to the writ.

### III.   CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

  S/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: June 28, 2006